# Farmers Loan and Trust Co. v. The Lake Street Elevated R. R. Co., The American Trust and Savings Bank and The Northern Trust Co.

1. SUPERIOR COURT—*Jurisdiction of Removal of Causes.*—The Superior Court of Cook County has jurisdiction to determine as to whether, upon the presentation made to it, an order of removal, under the United States Removal Act, should be made transferring the cause to the Federal Court.

2. REMOVAL OF CAUSES—*Question of, How Determined.*—On an application for the removal of a cause from a State to a Federal court, the question as to whether the petitioner is entitled to have the cause removed is to be determined by an inspection of the record in the State court.

3. SAME—*Failure of Petitioner to File a Bond.*—A State court may properly refuse to allow the prayer of the petition for the removal of a cause to the Federal court where the petitioner fails to make and file with his petition a bond, with good and sufficient sureties, as required by the Federal statute.

4. Foreign Corporations—*Power to Accept and Execute Trusts, etc.*—A foreign corporation needs no statutory permission to do in this State what it may lawfully do at home. By general comity, in the absence of positive directions to the contrary, corporations created in one State or Territory, are permitted to carry on any lawful business in any other State or Territory, and to acquire, hold and transfer property there, the same as domestic corporations may do.

5. Same—*Rights and Liabilities.*—Foreign corporations, and the officers and agents thereof, doing business in this State are placed on an equality with corporations of like character organized under the general laws of this State, to the extent that they shall exercise no greater or different powers, and shall be subject to the same regulations and restrictions, and governed by the same laws in these respects.

6. Same—*Acting as Trustee in this State.*—A foreign corporation accepting and acting as a trustee under a deed vesting it with power and discretion, among other things, in a certain contingency, to enter into and take possession of all property conveyed by such deed, and hold and operate the same by such agent and managers as it may appoint; collect and receive all moneys and revenues arising from such management, and apply the same to its expenses in the performance of the trust, including a reasonable compensation for its services, etc.; next, to the maintenance and operation of the property including the payment of taxes, assessments and other charges, damages, etc.; and next, to the payment *pro rata* of the interest due and in default of certain bonds, comes within the purview of section nine of the act "to provide for and regulate the administration of trusts by trust companies" (approved June 15, 1887); and such corporation can not act under such act in this State without first complying with its provisions.

7. Parties—*Who are Necessary in Equity.*—In a suit in equity, to remove a trustee where the *cestuis que trust* are numerous, it is not necessary that all of them should be made parties to the suit.

8. Same—*By Representation.*—Where it appears that a particular party, though not before the court in person, is so far represented by others that his interests receive actual and efficient protection, the decree may be held to be binding upon him.

9. Freehold and Franchise—*When Not Involved.*—In a proceeding in equity, to remove a trustee appointed in a deed of trust of real and personal property, neither a freehold nor a franchise is involved.

**Bill**, to remove a trustee. Appeal from the Superior Court of Cook County; the Hon. John Barton Payne, Judge, presiding. Heard in this court at the October term, 1886. Affirmed. Opinion filed February 9, 1897.

## Statement of the Case.

This is an appeal from a decree of the Superior Court of Cook County, removing appellant as trustee under a mort-

668 APPELLATE COURTS OF ILLINOIS.

VOL. 68.] Farmers Loan and Trust Co. v. Lake St. El. R. R. Co.

gage made by appellee The Lake Street Elevated Railroad Company, to appellant The Farmers Loan and Trust Company and The American Trust and Savings Bank, as trustees; and enjoining appellant from taking any steps to foreclose or otherwise act as trustee under the mortgage.

The bill was filed by appellee The Lake Street Elevated Railroad Company, on the 30th day of January, 1896, and made appellant The Farmers Loan and Trust Company, The American Trust and Saving Bank and The Northern Trust Company defendants.

The bill alleged that on the 7th day of April, 1893, the complainant, The Lake Street Elevated Railroad Company, made a mortgage to the defendant The American Trust and Savings Bank, and the defendant The Farmers Loan and Trust Company, as trustees; that the trust was accepted in writing by the trustees, and that the mortgage was duly recorded on May 6, 1893.

RUNNELLS & BURRY and HERRICK, ALLEN, BOYESEN & MARTIN, attorneys for appellant.

KNIGHT & BROWN, attorneys for appellee The Lake Street Elevated R. R. Co.

MORAN, KRAUS & MAYER, attorneys for appellee The American Trust and Savings Bank.

DUPEE, JUDAH, WILLARD & WOLF, attorneys for appellee The Northern Trust Co.

MR. JUSTICE WATERMAN DELIVERED THE OPINION OF THE COURT.

In the body of the bill the complainant declared that it made the above named defendants and all other holders of bonds issued by the Lake Street Elevated Railroad Company under such mortgage, and all the trustees, parties defendant to its bill of complaint; but it asked for process against only the three defendants above named, and none other were brought into or appeared in the cause.

Appellant filed its petition, asking that said cause be transferred to the United States Circuit Court for the Northern District of Illinois. This petition the court denied, and this is said to have been error.

Upon the denial of such petition, appellant applied to said United States court, asking that it direct the transfer of said cause into its forum. The United States court, upon full consideration of the matter, decided that appellant was entitled to have the cause transferred, and took jurisdiction. From such action on the part of the United States Circuit Court an appeal was taken by the complainant in said bill, to the United States Appellate Court for this judicial circuit. That court declined to pass upon the question involved in the appeal, holding that if the action of the United States Circuit Court in directing a transfer was improper, its order in that regard was a nullity, having no effect upon the Superior Court of this county, in which the suit was brought, and that the action of the United States Circuit Court was one which it could at any time rescind in case it, at any time during the progress of the cause, came to the conclusion that in taking jurisdiction as it did, it acted erroneously.

That the Superior Court of this county had jurisdiction to determine as to whether, upon the presentation made to it, an order of removal should be made, is beyond question. Stone v. Sargeant, 129 Mass. 503; Broadway Nat'l Bank v. Adams, 130 Mass. 431; Amy v. Manning, 144 Mass. 153; Burlington Ry. Co. v. Dunn, 122 U. S. 513; Mo. Pac. Ry. Co. v. Fitzgerald, 160 U. S. 556.

The question presented to the Superior Court as to whether the petitioner was entitled to have the cause removed to the United States Circuit Court was to be determined by an inspection of the record in the Superior Court. Crehore v. Ohio & Mississippi Ry. Co., 131 U. S. 240; Beadleston v. Harpending, 32 Fed. Rep. 644.

The Superior Court refused to allow the prayer of the petition for removal, because, among other reasons, the petitioner had not presented such a bond as is required by statute.

670    APPELLATE COURTS OF ILLINOIS.

VOL. 68.] Farmers Loan and Trust Co. v. Lake St. El. R. R. Co.

It is true that, under the United States removal statute, the sufficiency of the bond is not a matter of substance affecting the jurisdiction, and that therefore objections to it may be waived, and may in some instances be cured by amendment. Ayres v. Watson, 113 U. S. 594: Coburn et al. v. Cedar Valley Land & Cattle Co., 25 Fed. Rep. 791.

If the Superior Court had transferred this cause to the United States Circuit Court it may be that the petitioner would there have been allowed to file a good and sufficient bond, conformable to the statute; but the question presented to the Superior Court was whether, upon the record presented to it, a removal should be made; and it does not appear that the petitioner asked leave to file any new or additional bond, although it did offer to show that the obligors were amply sufficient for the undertaking they had entered into.

The statute under which such removal was sought is that " any party entitled to removal may make and file a petition in such suit, in such State court, * * * and shall make and file therewith a bond, with good and sufficient surety."

In the present case, the petitioner, the Farmers Loan and Trust Company, did not make and file with its petition any bond at all. The bond filed was that of William Burry and Rockwell King, of Chicago. Clearly, a bond made by those parties was not such an one as the statute makes a pre-requisite to the right of removal.

The Supreme Court of this State, in Weed Sewing Machine Co. v. Smith, 71 Ill. 204, held that to entitle a party to, under the United States statute, transfer a cause from the State to the United States Court, it was the duty of the petitioner to present a bond signed by itself, with sureties proven to the court to be sufficient. That rule was followed in Cleveland, Cincinnati, Chicago & St. Louis Ry. Co. v. Monahan, 140 Ill. 474.

The Superior Court, therefore, properly refused to transfer the cause to the United States Court, and its jurisdiction was not affected by the action of the United States Circuit Court before mentioned. True it is, that as to the right of

removal the decision of the Supreme Court of the United States is final, but the Superior Court is not bound by the action of the United States Circuit Court, and that court is not concluded by what was done in the Superior Court; while, as to the right of removal, the action of each of those courts is finally reviewable by the Supreme Court of the United States. The Superior Court, retaining jurisdiction, went on to determine the issues presented by the pleadings before it, and rendered a decree removing appellant as trustee under the said mortgage. The bill filed in the Superior Court alleged that appellant was, at the time the mortgage was executed and delivered, May, 1893, a corporation of the State of New York, and had not, prior thereto nor since, complied with the laws of the State of Illinois requiring the deposit with the auditor of public accounts of the sum of $200,000 in securities for the benefit of its creditors, as was alleged it was bound, under the laws of this State, to do before entering upon the performance of its duties as such trustee.

The law of this State referred to is, in part, as follows:

"That any corporation which has been or shall be incorporated under the general incorporation laws of this State, being an act entitled 'An act concerning corporations,' and all amendments thereof, for the purpose of accepting and executing trusts, and any corporations now or hereafter authorized by law to accept and execute trusts, may be appointed assignee or trustee by deed, and executor or trustee by will, and such appointment shall be of like force as in the case of appointment of a natural person."

The statute also, in the enumeration of the duties of corporations accepting and executing trusts, provides that such companies shall file with the State auditor, during the month of January of each year, a list and brief description of the trusts held by such company, the source of the appointment thereto, and the amount of real and personal estate held by such company by virtue thereof, except that mere mortgage trusts, wherein no action has been taken by such company, shall not be included in such statement.

672     APPELLATE COURTS OF ILLINOIS.

VOL. 68.] Farmers Loan and Trust Co. v. Lake St. El. R. R. Co.

It is conceded that appellant has not attempted to comply with the provisions of this statute, it being urged in its behalf, that the trust which it accepted, and under which it has acted as trustee of the Lake Street Elevated Railroad Company, is not such an one as is within the purview of the statute in question.

It is the case, as is contended by appellant, that a foreign corporation, authorized by the State of its domicile to accept and execute trusts, needs no statutory permission to do in foreign States what it may lawfully do at home. By virtue of general comity, which, in the absence of positive directions to the contrary, prevails throughout the United States, corporations created in one State or Territory are permitted to carry on any lawful business in any other State or Territory, and to acquire, hold and transfer property there, as may domestic corporations. Stevens v. Pratt, 101 Ill. 225.

Nor does it necessarily follow that a prohibition against the exercise of certain functions by domestic corporations necessarily amounts to a similar prohibition against foreign corporations; but the 26th section of the general act concerning corporations, makes foreign corporations, the officers and agents thereof, doing business in this State, subject to all the liabilities, restrictions and duties that are or may be imposed upon corporations of like character organized under the general laws of this State; and further provides that foreign corporations shall have, in this State, no other or greater powers than domestic corporations.

This section has been passed upon in the case of Pennsylvania Co. v. Bauerele, 143 Ill. 459. In that case the court declared that by this act foreign corporations and the officers and agents thereof, doing business in this State, are placed on an equality with corporations of like character organized or to be organized under the general laws of this State, to the extent that they shall exercise no greater or different powers, and shall be subject to the same regulations and restrictions, and governed by the same rules of law in these respects.

It is insisted by appellant that it, by virtue of the trust deed, occupies merely the position of a mortgagee, and that in this State the rule is well settled that the mortgagor, notwithstanding the terms of an instrument which is called but a mortgage, is considered the real owner of the property, and that therefore the trust deed, which appellant styles "a mere mortgage," was not within the prohibition of the statute.

If the instrument under consideration were a mere mortgage, that is to say, a mere transfer of title or vesting of a lien as security, imposing upon appellant no active duties giving it the right, perhaps, upon default, to file a bill, but not making it imperative that it should do so in any case, a very different question would be presented.

An examination of the trust deed reveals that there has been imposed upon appellant, and that it has engaged in the execution of, a trust of a very active nature; that it is no mere naked trustee, but is clothed with great authority, endowed with discretion to act, and that in pursuance of the authority conferred upon it, it has been continually doing business in this State and receiving compensation therefor. It began by accepting the trust, which was for the purpose of securing an issue of bonds, now amounting to $7,574,000; in pursuance of the trust conferred upon it, it has had examined vouchers showing the progress of work upon the Lake Street Elevated Railroad, and has certified and delivered bonds upon such vouchers to the amount of $3,000,000, receiving therefor one dollar for each bond so certified.

As before stated, appellant and the American Trust and Savings Bank were co-trustees. The trust deed, among other things, contains the following:

" To further assure this provision, the said trustees, if they deem proper to do so, may appoint an agent of known integrity and business capacity, with full power to dismiss him and appoint another in his stead at pleasure, who shall have the right to attend all meetings of the board of directors, have free access to, and from time to time examine all

674 APPELLATE COURTS OF ILLINOIS.

VOL. 68.] Farmers Loan and Trust Co. v. Lake St. El. R. R. Co.

books of account of the party of the first part appertaining to the application and expenditure of said proceeds of the sale of all said bonds issued in excess of said six thousand five hundred (6,500) bonds, and shall make full report thereof to the trustees every three months, and as much oftener as they may from time to time require, for the information of the bondholders under this mortgage; and the railroad company shall pay said agent a reasonable compensation for his services, during the time of the construction of said railroad, for which additional bonds are desired as aforesaid, not to exceed, however, one thousand dollars ($1,000) per annum."

Altogether, these trustees have certified and delivered 7,574 bonds in the course of this business. Many questions have arisen, which appellant has been obliged to, and has, considered, and much discretion has been by it exercised. It has found it necessary to, and has, appointed an agent to act for it in the State of Illinois, and has paid him compensation therefor.

It, with its co-trustee, is also vested with much power and discretion which it has not yet exercised. The trust deed is in part as follows: That in a certain contingency the trustees "shall enter into and take full possession of said railroad, and of all property hereby mortgaged or expressed, or intended so to be, and hold, use, manage, maintain and operate said railroad by such agent and managers as such trustees may appoint," and that they shall "collect and receive all moneys and revenues arising from such management and apply the same to the expenses of the trustees in the performance of the trust, including a reasonable compensation for their own services, the services of their counsel, attorneys, agents and other servants, and next to the maintenance, management and operation of the said railroad and of the property belonging thereto, hereby mortgaged, including the payment of taxes, assessments and other governmental charges, damages and such useful additions, alterations or repairs to the mortgaged property or any of it, as the trustees may think proper to be made; and

next, to the payment *pro rata* of the interest due and in default of said bonds."

We entertain no doubt that the trust accepted by appellant is within the terms of the statute of this State, and that it can not act thereunder without first complying with the law of this State.

It is urged by appellant that complainant's bill being for the removal of a trustee, it was necessary that all the *cestuis que trust* are necessary parties to the suit.

This we consider a question of more doubt than any other presented in the case.   The general rule undoubtedly is, that all the *cestuis que trust* are necessary parties to a bill to remove a trustee. 1 Perry on Trusts, Sec. 282; 2 Perry on Trusts, Sec. 875; Hill on Trustees, star paging, 195; Bear v. Amer. Telegraph Co., 36 Hun, 400.

In considering this question, it is necessary to keep clearly in mind the distinction between proper and necessary parties, between those who have a right to, or may be, made parties, and those whom it is necessary should be brought in, in order that the decree entered may be valid; and it is to be borne in mind that when considering whether a decree is invalid for want of parties, it is not so much what was sought by the bill as what is given by the decree that is to be looked at; the question always being— were all persons necessary to the relief obtained brought in ?   Thus it may be, that considering the prayer of a bill, a chancellor should have required an amendment or dismissed the same for want of proper parties, and yet the decree rendered thereunder be valid, because to the relief obtained all necessary parties were brought in.

The rule stated in Calvert on Parties to Suits in Equity, page 7, is:   " All persons having an interest in the object of the suit ought to be made parties."

In Wych v. Meal, 3 P. W. 311, it is said:   "It is a general rule that no one need be made a party against whom, if brought to a hearing, the plaintiff can have no decree."

If said doctrine were to be applied in this case, it is manifest there was no defect for want of parties, as the decree is only against the appellant.

676     APPELLATE COURTS OF ILLINOIS.

VOL. 68.] Farmers Loan and Trust Co. v. Lake St. El. R. R. Co.

In Cockburn v. Thompson, 16 Vesey, 325, it is said: "The strict rule is, that all persons materially interested in the subject of the suit, however numerous, ought to be parties, that there may be a complete decree between all parties having material interests; but that, being the general rule established for the convenient administration of justice, must not be adhered to in cases to which, consistently with practical convenience, it is incapable of application. In the familiar case of creditors suing on behalf of themselves and all others, what an infinite number of valuable interests may be bound, in a sense, not absolutely; as, where the court, for convenience, dispenses with the presence of parties, the principal leaves it by future arrangement to find out the means of giving them an opportunity in some shape of coming in." So, too, Lord Thurlow, in the case of Pearce v. Piper, 17 Vesey, 1, in discussing the general rule requiring all parties having material interest to be brought in, said that the difficulties presented by such rule were overcome upon this principle, and that it was better to go as far as possible toward justice than to deny it altogether.

In Perry on Trusts, Sec. 885, it is said: "Where the parties in interest are so numerous that it is not possible or convenient to join all as plaintiffs, the court will allow a few *cestuis que trust* to sue in behalf of themselves and the others, so a small number may be made defendants as representatives of all the others, for the purpose of determining their rights, but in such cases all the trustees must be joined. If all the *cestuis que trust* must join in a conveyance, they should all join in the suit, otherwise the litigation might be futile; but in the absence of any, the court will proceed to bind the rights of all, if possible, in order that a few may sue or be sued in behalf of a large number; it must appear that all have the same beneficial interests, or, if they have different or conflicting interests, they must all be brought before the court, in order that their separate interests may be adjusted."

It seems to be established in England that the rule requiring all parties in interest to be brought in is one that yields

to considerations of convenience and practicability, and that where the parties in interest are numerous, or where it is impracticable to bring in all parties who have interests, a few may be made parties as representing all, the court being satisfied, and if necessary, seeing to it that the litigation is so conducted and the contest so made that the interests of all are protected, and that neither by collusion or inattention is there a failure to protect the rights of all persons who are affected by the decree; as see, to this effect, Adair v. The New River Co., 11 Vesey, 429; The Attorney-General v. Jackson, 11 Vesey, 365.

In the last named case, Lord Eldon said: "It is true, upon a bill for equitable relief as to a rent charge, with some few exceptions, all the persons whose estates are liable must be brought before the court, that complete justice may be done, and the question tried in the presence of all who are interested; also, with reference to contribution among them. I say with few exceptions, for some cases are to be found under circumstances making the rule impracticable or inconvenient in a degree almost arising to that, and those circumstances have induced the court to dispense with that rule."

In Meux v. Maltby, 2 Swanston's Reports, 277, the court, after reviewing the authorities, said: "The rule that all persons interested must be parties yields when justice requires it in the instance either of plaintiffs or defendants. The rigid enforcement of the rule would lead to perpetual difficulty."

There is a current of authority adopting, more or less, a general principle of exception to such rule. To the same effect is City of London v. Richmond, 2 Vernon's Rpts. 421.

In Harvey v. Harvey, 4 Beavan, 215, objection was made that the suit was imperfect for want of parties. The Master of the Rolls said: "Questions of this nature—whether certain persons so circumstanced are or are not independent parties to a suit—are very much questions of convenience, and in this case I am of opinion that, though some incon-

678     APPELLATE COURTS OF ILLINOIS.

VOL. 68.]   Farmers Loan and Trust Co. v. Lake St. El. R. R. Co.

venience may arise in not having all the parties presump-
tively entitled before the court, that such inconvenience
would be considerably less than would necessarily arise
from requiring them to be made parties in this stage of the
cause, and which would probably amount to a complete
obstruction of the suit, and would render it impossible ever
to bring it to a hearing." No other objection for the want
of parties being made, the cause was referred to a master
for further inquiry as to who were the next of kin and who
the legal personal representatives of such next of kin as
were dead. In 5 Beavan, page 134, it appeared that the
master reported that such next of kin were twenty in num-
ber, of whom twelve were now living, and that of the
remaining eight there were personal representatives of three
only, and that the others were not represented; so that on
the whole, five-ninths of the next of kin were represented
in the suit. Upon this record the court determined that it
would hear the cause in the absence of the other next of
kin.

In Bunnett v. Foster, 7 Beavan, 540, the Master of the
Rolls said, that the practice of allowing some members of
the class to represent the whole in certain cases had been
adopted on grounds of convenience, but in this respect
every case must be governed by its own circumstances.

In one case where the *cestuis que trust* were twenty-six
in number, and in another twenty-seven, a few were allowed
to maintain bills in behalf of the whole for the execution
of the trust.

In Hale et al. v. Hale et al., 146 Ill. 227, it is said :

" It is unquestionably a general rule, subject, however, to
certain well recognized exceptions, that in proceedings in
equity, the interests of parties not before the court will not
be bound by the decree. But among the exceptions is one
growing out of convenience or necessity in the administra-
tion of justice, which has given rise to what is known as the
doctrine of representation. Thus, where it appears that a
particular party, though not before the court in person, is
so far represented by others that his interests receive actual

and efficient protection, the decree may be held to be binding upon him.

A familiar illustration may be found in cases where the parties are so numerous that it is inconvenient or impossible to bring them all before the court, and it appears that they all stand in the same situation, and have one common right or have one common interest, the operation and protection of which will be for the common benefit of all, and can not be to the injury of any.   Under such circumstances, the bill is permitted to be filed by a few, on behalf of themselves and all others, or against a few, and yet bind the rights and interests of all others.   Story's Eq. Plead., Sec. 126.''

We are not now dealing with the question presented in Toler v. East Tenn. V. & G. Ry. Co., 67 Fed. Rep. 168, in which a *cestui que trust* came into court and asked leave to intervene, but with a case in which no attempt has been made to get in, or have brought in, any person not a party to the litigation.   This is not a case in which, as regards the relief obtained, the *cestuis que trust* have conflicting interests. Each and all of the bondholders are interested in having trustees entitled, under the laws of this State, to act in accordance with the terms of the trust deed.   The duties and obligations of the trustees are the same toward each and every bondholder.   As is well said in Toler v. E. Tenn. V. & G. Ry. Co., 67 Fed. Rep. 168:  "In this case, whether the trustee be a complainant or a defendant, he stands for and represents all the beneficiaries who, though not actually parties, will be concluded by the decree, unless it is impeached for fraud or collusion between him and the adverse parties."

That the duty of the trustees, under this instrument, be they those originally designated or those who may hereafter be selected, is to protect and act equally for each and every bondholder, is a truism which, to a lawyer, it is unnecessary to mention.   It is quite true that, in the exercise of discretion conferred upon trustees, differences of opinion may arise, conduct favored by certain trustees being opposed by others, but whatever be the discretion

680    APPELLATE COURTS OF ILLINOIS.

VOL. 68.] Farmers Loan and Trust Co. v. Lake St. El. R. R. Co.

finally exercised, the course ultimately pursued is to be determined upon and followed with a view to the equal protection of all the *cestius que trust*, whether the *cestuis que trust*, or any portion thereof, favor or oppose the action taken.

Appellant, as a trustee, having been removed by the decree of the court below, not because of any dereliction of duty, but for the reason only that under the laws of this State it is not entitled to act as such trustee, the removal is not one which injuriously affects the interests of anybody. Appellant, if it has been acting in violation of the laws of this State, certainly desires to cease so doing; and each and every bondholder, if appellant is not entitled to act as a trustee in this matter, has no desire that it should continue so to do.

The question presented is one of law only, and one in which all parties are interested to have such action taken as is in accordance with the law of this State.

We agree with counsel for appellant in their contention that it was no more necessary that The Northern Trust Company be made a party to this litigation than that any other bondholder be made a party. There was, nevertheless, a manifest propriety in selecting The Northern Trust Company as a representative of the bondholders, it holding 6,592 of the bonds issued by The Lake Street Elevated Railroad Company, and thus representing more than six-sevenths of the indebtedness secured by the trust deed.

The powers and duties of the trustees under this mortgage were great. The Lake Street Elevated Railroad Company was itself a *cestui que trust*, and, as such, properly filed the bill in this case. It was, perhaps, necessary that only one of the *cestuis que trust* should be a party to this litigation, and that each of the trustees should be brought in. To have brought in all of the *cestuis que trust* and conducted this litigation with all the necessary changes occurring from time to time, by death and otherwise, in the ownership of these bonds, would have protracted these proceedings indefinitely. In so important a matter as is this, involving

interests so varied and extensive, the interests of each bond-holder required that action should be prompt. That the trustees are not bound to act in accordance with the wishes of the majority of the bondholders, has already been stated; that they ought not to do so, if such action will be unfair or unjust to a minority, however small it may be, it is unnecessary to state.

If the record presented any reason for thinking that this litigation had been collusively conducted, with a view to preventing a fair or vigorous presentation of the rights of any bondholder, or if it appeared that the decree in any way or wise injuriously affected any *cestui que trust*, we should regard this matter differently. On the contrary, it is manifest that a most vigorous and earnest resistance to the relief sought by The Lake Street Elevated Railroad Company, and to the decree entered by the court, was made. Certain bondholders, not represented by The Northern Trust Company, and who appear to have been opposed to the action taken by the court below, testified in the cause. Able counsel were employed by appellant, and, so far as we can see, everything was done, every argument and suggestion made, to prevent the removal of appellant that could have been adduced had each and every *cestui que trust* been actually brought into the litigation.

The court having removed appellant, it was proper that an injunction against further action as such trustee by appellant should be entered.

We do not think that The Lake Street Elevated Railroad Company, or any other *cestui que trust* is estopped to ask for the removal of appellant and the appointment of a new trustee in its place. The Lake Street Elevated Railroad Company is not asking that the security by it given shall be in any way impaired, or that any act done by appellant under the trust deed shall be declared invalid. All that was asked, and all that has been done, is simply that under the trust deed there should be such trustees as, by the laws of the State of Illinois, are authorized to carry out the provisions of the trust.

682 APPELLATE COURTS OF ILLINOIS.

VOL. 68.] Novak v. Vypomocny Spolek Vlastenec B. & L. Ass'n.

If The Lake Street Elevated Railroad Company, or any other *cestui que trust*, had sought, or was now seeking under this decree, to invalidate any acts that by virtue of the trust deed have been done by the trustees, a very different question would be presented, and the law of estoppel might have application.

The motion to dismiss this appeal is denied, because, in the opinion of this court, neither a franchise nor a freehold is involved in this proceeding; and also because the decree of the court below was final, and the certificate of evidence made is sufficient to enable this court to pass upon the questions presented to it.

The decree of the Superior Court is therefore affirmed.